28535. PRICE *et al. v.* COBB *et al.*

DECIDED NOVEMBER 23, 1940.

*Oliver & Oliver,* for plaintiffs in error.

*Shelby Myrick, Abrahams, Bouhan, Atkinson & Lawrence, Kennedy & McWhorter, J. Henry Howard,* contra.

GARDNER, J.   On June 5, 1939, Albert L. Cobb, having formerly brought an action against certain named defendants for malicious prosecution, and thereafter, pursuant to the decision of this court (*Price* v. *Cobb,* 60 *Ga. App.* 59, 3 S. E. 131), having dismissed that action, renewed his suit on substantially the same cause and against the same parties defendant, save as the cause in the instant case became more immediately predicated on a later and final process

supporting the continuing cause formerly existing, and as the cause has been amended voluntarily or responsively to the order of the court, or as parties have been added by the plaintiff or stricken by order of the court. The parties defendant as finally made were T. M. Price and E. J. Bowman of Chatham County, C. M. Daughtry, Tom D. Daughtry, Marie Daughtry Lipsey (known as Marie Daughtry), Mrs. Ola Brunson, B. B. Barber, and B. W. Miller of Screven County, B. F. Clayton of Jenkins County, and Mrs. C. J. Oliver of Emanuel County, all of whom, save B. W. Miller, who prosecuted separate exceptions, are before the court as plaintiffs in error. Alleging that he had been injured and damaged in a certain sum because of malicious prosecution by the named defendants for the murder of C. L. Daughtry, the plaintiff made substantially the following material allegations as briefed from the petition as amended:

The defendants, together with a certain attorney employed to assist the prosecution, the solicitor-general and the judge (not named as defendants), entered into an unlawful, immoral, and malicious plot or conspiracy on or about October 10, 1937, with the intent and purpose of falsely and maliciously charging, indicting, prosecuting, and convicting the plaintiff of the murder of Daughtry. Pursuant to this conspiracy the defendants caused the grand jury to indict the plaintiff on November 16, 1937, on false and perjured testimony of certain named witnesses. On this indictment the court ruled the defendant to trial on March 7, 1938, when the solicitor-general requested and obtained an order of the court nolprossing this indictment because of a total lack of evidence of the plaintiff's guilt. Further pursuing the unlawful conspiracy, the defendants and their coconspirators thereafter, on August 5, 1938, again caused a presentment (same effect as indictment) to be returned against the plaintiff on false and perjured testimony, again falsely and maliciously charging him with the murder of Daughtry, on which he was maliciously tried on September 5, 1938, which resulted in his acquittal and in a termination of the malicious prosecution against him. Marie Daughtry Lipsey ratified and participated in the conspiracy on or about December 7, 1937, and continued in active participation until the prosecution terminated. The alleged coconspirators, the attorney assisting the prosecution, the solicitor-general, and the judge, and the de-

fendant B. W. Miller, having joined, at least some of them as of October 10, 1937, ratified the conspiracy on or about November 16, 1937, and continued in active participation until the prosecution ended. The coconspirator, the attorney assisting the prosecution, as counsel for the conspirators, with full knowledge of the unlawful conspiracy, acted on behalf of the conspirators to prosecute the plaintiff under the false charge of murder, knowing that the prosecution was malicious and without probable cause. The coconspirators, the solicitor-general and judge, were such officers, respectively of the judicial circuit while engaged in the unlawful conspiracy, and acted in concert and confederation with the defendants, knowing that the prosecution was false and malicious and without probable cause. There was no truthful, material evidence with which to charge the crime. The plaintiff was innocent, and was acquitted. All the conspirators and coconspirators knew the charge was false, and the prosecution malicious and without probable cause. The first finding of the grand jury was an indictment, copy of which was attached to the petition. The second return was by special presentment, which also by amendment was attached to the petition, and named others as codefendants with plaintiff in that process. "In this special presentment," according to brief of plaintiffs in error, "of August 5, 1938, returned against Ralph Newton, Joe Newton, and Albert L. Cobb, it is alleged that Osborne Newton and John Burns and Lonnie Lanier and Aaron Nelson had been previously indicted by this grand jury for said offense of murder, . . the solicitor-general proceeded with due dispatch and in accordance with law at the May adjourned term, 1938, of Screven superior court, to secure a second indictment against some of the parties named in the first indictment, before the expiration of six months," and "since the grand jury by special presentment returned an indictment against Joe Newton, Ralph Newton, and Albert L. Cobb on August 5, 1938, the special presentment was likewise within the six-months period from the date of the nolle prosequi of March 7, 1938."

The court overruled the general and special demurrers to the petition as amended. To this judgment the defendants excepted. The court also overruled the motion to dismiss as to Marie Daughtry Lipsey, who excepted. All appear as plaintiffs in error.

■ "A criminal prosecution, maliciously carried on, and without

any probable cause, whereby damage ensues to the person prosecuted, shall give him a cause of action." Code, § 105-801. "The prosecution must be ended before the right of action accrues." § 105-806. Actions for malicious prosecution are not favored. *Henderson* v. *Francis,* 75 *Ga.* 178 (5); *Hearn* v. *Batchelor,* 47 *Ga. App.* 213 (5), 215 (170 S. E. 203). While the action will be strictly guarded and the circumstances on which it is based must be accurately stated (*Hearn* v. *Batchelor,* supra), and "all proper guard and protection should be thrown around those who, in obedience to the mandates of duty, may be compelled to originate and carry on a criminal prosecution," the courts "should not discourage actions for malicious prosecutions by establishing harsh rules of evidence, or by the rigid principles of law, by force of which a party may be deprived of an important remedy for a real injury." *Hicks* v. *Brantley,* 102 *Ga.* 264, 270 (29 S. E. 459). The right of action subsists in the statutes as codified (§§ 105-801 et seq.). The adequacy of pleading to set forth a cause of action is measured by the same rules of pleading as obtain generally in any other cause pleaded. Evidentiary facts need not be pleaded. In *Lefkoff* v. *Sicro,* 189 *Ga.* 554 (10) (6 S. E. 2d, 687), the court held: "Good pleading requires only that the plaintiff plainly and concisely state the material ultimate facts" on which the plaintiff "depends for a recovery;" and, "As a general rule, the evidentiary facts upon which the plaintiff relies to prove the ultimate facts need not and should not be set forth in the pleadings."

In the instant case the plaintiff alleged, that certain named defendants, on stated times and occasions, entered into a conspiracy to falsely charge the plaintiff with the murder of C. L. Daughtry, and to secure his indictment and conviction, with malice and without probable cause; that they did, on perjured testimony of named witnesses procured by them, effectuate an indictment charging the plaintiff with the crime; that this indictment was nolprossed by the solicitor-general acting under the sanction of the court; that the plaintiff was reindicted or presented again on perjured testimony; that on the second indictment or presentment the plaintiff was maliciously tried, without probable cause, and was acquitted; that the solicitor-general knew of and engaged in the conspiracy to falsely and maliciously prosecute the plaintiff without probable cause; that he and other of the defendants went before the grand

jury and insisted that the plaintiff was guilty and that the solicitor-general was in possession of evidence or accessible to evidence that would convict the plaintiff were the grand jury to indict him; that an attorney employed to assist in the prosecution sought to obtain perjured testimony from a defendant jointly indicted with plaintiff for the murder of Daughtry, in order to convict the plaintiff; that the judge named in the allegations knew of the conspiracy, and condoned and promoted it by allowing and directing the prosecution to proceed; that the appearance for the illegal purposes indicated by the solicitor-general and other named conspirators was upon the occasion of each indictment or presentment being returned; that the prosecution had terminated favorably to the plaintiff; and that the plaintiff had sustained certain specified injuries. When, under these ultimate facts as alleged, the plaintiff pleaded the conspiracy, the malice to prosecute and injure him, and to prosecute without probable cause, and that the prosecution had ended favorably to the plaintiff, together with the other supporting allegations, we think, as against a general demurrer, the petition was good. In this connection see *Woodruff* v. *Hughes, 2 Ga. App.* 361 (3) (58 S. E. 551), where it was held, with reference to the petition withstanding a general demurrer: "In an action on the case for conspiracy the allegation with reference to the combination, conspiring, and concert of action are mere matters of inducement leading up to the relation of the acts from which conspiracy may be inferred. To show conspiracy it is not necessary to prove that the parties met together or entered into any specific or formal agreement, or that by words or writing they formulated their unlawful objects. Proof that two or more persons, either positively or tacitly, come to an understanding that they will accomplish an unlawful design, or a lawful design unlawfully, is sufficient."

The return of an indictment or presentment by a grand jury, while not conclusive, is prima facie evidence of the existence of probable cause. *Darnell* v. *Shirley, 31 Ga. App.* 764 (7 *a*) (122 S. E. 252) ; *Harris* v. *Gray, 58 Ga. App.* 689 (2) (199 S. E. 831). But in the necessity of pleading the indictment on which the malicious prosecution was had, the plaintiff will not be concluded on the question of the existence of probable cause adversely to his right of action, where he further alleges malice and lack of probable cause for his prosecution. The indictment set forth must be treated

as inducement showing the particular criminal process on which the petitioner was maliciously tried; otherwise a party, in the necessity of setting forth the criminal process, would be ipso facto precluded on a cause of action provided by the Code for such injury tortiously sustained. Alone pleaded, the action would be demurrable; but pleaded with other necessary allegations of malice and lack of probable cause, the prima facie force of it as evidence must be weighed in a full consideration by the jury of all the evidence (*McLaren* v. *Birdsong*, 24 *Ga.* 265 (6)) bearing on the existence or want of probable cause, and in the light of the requirement that the burden (*Thornton* v. *Story*, 24 *Ga. App.* 503 (2), 101 S. E. 309) is on the plaintiff to show want of probable cause.

Officers of the court are presumed to have acted legally and in the performance of their sworn duties. *Kirk* v. *State*, 73 *Ga.* 620 (3-*b*) 628; *Hamby* v. *Collier*, 136 *Ga.* 309 (6) (71 S. E. 431); *Brinson* v. *Georgia Railroad Bank & Trust Co.*, 45 *Ga. App.* 459, 460 (165 S. E. 321). This is a rebuttable presumption, however; and allegations, as in this case, that the prosecuting officer, or the counsel employed to assist in the prosecution, acted knowingly and with malice and without probable cause in any or all stages of the malicious prosecution alleged, whether procuring the indictments, or trying the plaintiff, or securing testimony illegally to further the prosecution, will save the petition against demurrer. A fortiori, where the maintenance of the action may not necessarily depend upon the *illegal* co-operation *knowingly* of such officers, as where the officers might act in good' faith in legal performance of all acts and things, yet the malicious prosecution be carried on without probable cause by the defendants, or any of them, aside from the officers, by procuring or giving perjured testimony, or doing other illegal acts or things in the course of the prosecution, from its inception to its conclusion.

■ . A malicious prosecution may be as extensive, in the beginning, as in the rise of the initial facts and circumstances giving birth to the malicious spirit or motive to prosecute, and in the conclusion, as in the last efforts to convict under the final process under which the defendant is then being tried, and may include all mesne or intermediate acts or things or processes which may support or evidence such motive. Within the rule may be warrants, accusations, or indictments, or reissues of either where dismissed or

nolprossed.  In *Price* v. *Cobb,* supra, this court held:  "The basis of the action for malicious prosecution is not alone the preferring of the bill; it is the spirit or motive that brought into life the warrant or bill of indictment."  The court further held that the entry of nolle prosequi on the previous indictment did not ipso facto terminate that prosecution, and that "If another indictment is drawn for the same offense, it may be a different bill of indictment, and in this sense a new case, but it is the *same* prosecution."  Therefore the allegations as to the previous indictment were proper as inducement to show, not the process on which the defendant was tried, but that which might show whether the malicious spirit prompting the prosecution coexisted with the process on which the trial was had only, or antedated such process, and to what extent and whether without probable cause.  This assignment of error is without merit.

■ Headnote 4 needs no elaboration.

■ ■  Elements of malicious prosecution are the existence of malice and the lack of probable cause, both of which must concur. "Malice may be inferred from a total want of probable cause, but the lack of probable cause can not be inferred from the existence of the most express malice. . .  Want of probable cause exists when the circumstances are such as to satisfy a reasonable man that the prosecutor had no grounds for proceeding but his desire to injure the accused."  *Hearn* v. *Batchelor,* supra, and cit.  To withstand demurrer, a petition must allege want of probable cause (*Marable* v. *Mayer,* 78 *Ga.* 710, 712, 3 S. E. 429), which was done in the instant case.  See *Hicks* v. *Brantley,* supra.  "Want of probable cause is a question for the jury, under the direction of the court.  The question of probable cause is a mixed question of law and fact.  Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the jury, but whether they amount to probable cause is a question of law for the court."  *Hearn* v. *Batchelor,* supra.  The finding or return of an indictment or presentment is valid where there is any competent evidence on which to base the finding.  The sufficiency of such evidence is not involved.  In order for the return to be invalid, it must be shown that the finding was predicated on wholly illegal evidence, and in the absence of any competent evidence.  *Meriwether* v. *State,* 63 *Ga. App.* 667 (11 S. E. 2d, 816).

The petition in the instant case is not demurrable in that it fails to disclose that the finding was on wholly illegal or perjured testimony given or procured by the defendants or their coconspirators. If legally returned, the bill of indictment or presentment is a valid process, and is presumed to be valid in any instance until successfully challenged. There can be no malicious abuse of criminal process. *Grist* v. *White,* 14 *Ga. App.* 147 (2), 149 (80 S. E. 519). A cause of action for malicious prosecution does not contemplate that the criminal process (procured legally or illegally) from the grand jury, or that under which the plaintiff is tried, *must be* an *invalid* process, though it may be. The motif in the procurement of the indictment or presentment, and in the trial of the plaintiff on the process, in bringing into existence the former and in impelling the latter, done with malice and without probable cause, is that which is material. Consequently it will not defeat the cause of action in the instant case when it appears that the former indictment was procured at the instance of the defendants or any of them as prosecutors, and subsequently the presentment, returned within six months of the nolle prosequi on the former indictment, was *only returned by special presentment* without instigation from the defendants in the technical sense of prosecutors. Suffice it to show, as in this case, that the motif was supplied by the defendants or any of them, or the coconspirators, by giving such testimony and suggestions before the grand jury, with malice and without probable cause, as impelled the grand jury, presumed to be acting legally, to return the indictment or presentment, and thereafter on trial of the plaintiff *to convict him by such testimony, and by efforts of the coconspirators,* with malice and without probable cause. The petition is not demurrable in failing to allege that the bills returned by the grand jury were *invalid,* or that the grand jurors acted illegally and corruptly in returning the bills. It follows that the desire and attempt to injure must coexist with the actual trial of the plaintiff, but may relate back and antedate the trial, and be evidenced, in the procurement of the first indictment, or subsequent processes, and by other attending, material facts and circumstances.

■ It is contemplated, under the Code, § 110-706, that under proper motion the court shall set aside judgments, verdicts, rules, or orders of the court, where entered entirely in consequence of corrupt and wilful perjury, if first it be shown that the offending

witnesses have been convicted of perjury; and such "judgment, verdict, rule, or order of the court," refers only to those judgments or orders which go directly in support or defeat of the rights of the parties injuriously affected thereby, such as in a civil case, for instance, where a plea of non est factum to an action on a promissory note is defeated by perjured testimony with resultant judgment against the movant seeking to set aside the judgment because of the perjury, or, in a criminal case, when a motion for new trial may depend upon a proper showing that the conviction of the movant was alone on the perjured testimony, and that the offending witnesses have been convicted of the perjury. *Massie* v. *State,* 24 *Ga. App.* 548 (3) (101 S. E. 703); *Morgan* v. *State,* 16 *Ga. App.* 559 (85 S. E. 827). But in an action for malicious prosecution, as alleged in the instant case, the right of action does not rest upon the *virtue of the judgment* of the grand jury. That judgment is the duly and legally constituted method of the State of accusing and restraining for eventual trial one suspected of crime, and any injury flowing therefrom to the plaintiff is damnum absque injuria. The basis of the cause of action is the prosecution *under* the process, yet extraneous of and coexistent with it, with malice and without probable cause, to the injury of the plaintiff. Accordingly, to sustain the action there is no requirement on the plaintiff that he attack the validity of the grand jury's return, in conformance with the Code, § 110-706, requiring that it first be shown that the witnesses giving perjured testimony have been convicted of perjury.

■ "In all cases he who maliciously procures an injury to be done to another, whether it is an actionable wrong or a breach of contract, is a joint wrongdoer, and may be sued either alone or jointly with the actor." Code, § 105-1207. *Lambert* v. *Cook,* 25 *Ga. App.* 712 (104 S. E. 509); *Wilder* v. *Gardner,* 39 *Ga. App.* 608 (3) (147 S. E. 911); *Burns* v. *Horkan,* 126 *Ga.* 161 (3) (54 S. E. 946). Recovery may be had against all. *National Bank of Savannah* v. *Evans,* 149 *Ga.* 67 (99 S. E. 123). Where a conspiracy is shown, the recovery may be had against either or all the conspirators, or, if no conspiracy be shown, against "such of the defendants as may be guilty of the tort." In *Woodruff* v. *Hughes,* supra, the court said: "A conspiracy is the combining of two or more persons for the purpose of doing something unlawful, op-

pressive, or immoral, as a means or an end. The allegation and proof of conspiracy is important to the action only because it will enable the plaintiff to recover his damages in case the conspiracy can be proved, not only from the actual participants engaged in committing the injury, but also from those defendants who conspired to accomplish it, although neither present nor participating. An averment that the acts alleged were done in pursuance of a conspiracy does not change the nature of the action, but it may be pleaded and proved as aggravating the wrong of which the plaintiff complains, and to enable him to recover against all the conspirators as joint tort-feasors, or (in case no conspiracy be shown) that the plaintiff may still recover against such of the defendants as may be guilty of the tort." The gist of the action (*Woodruff* v. *Hughes,* supra), is not the conspiracy shown, but the tort committed and the injury done in prosecuting the plaintiff maliciously and without probable cause. But in pursuing the tort-feasors the plaintiff is not compelled to name *all* as defendants; he may pursue either or all, jointly or severally. The petition was not demurrable for misjoinder of parties defendant, in omitting to name as defendants the judge, the solicitor-general, and the attorney employed to assist in the prosecution.

■ Ground 1 of the special demurrer is without merit. The allegations of the petition, including a copy of the indictment of August 5, 1938, set out that the testimony of the named witnesses, on which it was alleged the indictment was returned, that the plaintiff and other named defendants at the time designated in the indictment were those who murdered C. L. Daughtry, was false. These allegations were sufficient to give, as to this assignment, the material ultimate facts to be proved. The special demurrer called for facts which were evidentiary and not necessary to be alleged, nor was it necessary to allege that the indictment could not have been returned save only on the particular testimony of the named witnesses swearing falsely.

■ Allegations that the solicitor-general appeared several times before the May, 1938, adjourned session of the grand jury of Screven County between July 11 and August 5, 1938, and urged the grand jury to indict the plaintiff for the murder of Daughtry, stated that the plaintiff was guilty and that the (evidence of the) crime would unfold and the defendant be proved guilty at the trial;

that the solicitor-general knew that such representations were false; that there was no probable cause to suspect the plaintiff of the crime; and that all of such acts were committed as a part of a common scheme of the defendants to falsely charge and maliciously prosecute the plaintiff, set forth, as to this assignment, the material ultimate facts to be proved, and which negatived the presumption of the legality of the acts of the solicitor-general as the duly-qualified prosecuting officer of the State. It was not necessary to set out the evidentiary facts called for by ground 2 of the special demurrer.

■ Ground 3 of the special demurrer is without merit when taken most strongly against the pleader, when the effect of the allegation challenged is that there was, aside from the perjured testimony, no competent evidence on which the grand jury returned the indictment in question. The materiality of such fact is on the question whether there was probable cause for the prosecution of the plaintiff for the crime charged as relating back and antedating the trial and existing at the time of giving the allegedly false testimony to the grand jury then considering its return of the indictment.

■ Grounds 4, 5, and 6 of the special demurrer, under the rulings as above set out under subdivisions 9 and 10 of the opinion, are without merit, and require no discussion.

The court did not err in overruling the demurrers.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*