## 39317. SPRATLIN v. MANUFACTURERS ACCEPTANCE CORPORATION *et al.*

DECIDED FEBRUARY 20, 1962—REHEARING
DENIED MARCH 6, 1962.

*Crespi & Milam, Joseph S. Crespi,* for plaintiff in error.
*Haas, Dunaway, Shelfer & Haas, William S. Shelfer,* contra.

NICHOLS, Presiding Judge. The plaintiff, in his petition, alleged in general terms that the defendants were guilty of maliciously prosecuting him for larceny after trust while the affidavits of the defendants, in support of their motion for summary judgment, outlined in detail the steps taken by them in connection with the prosecution of the plaintiff.

In support of his position, that the trial court erred in granting the summary judgment, the plaintiff contends that the allegations of the petition denied in the answer raised an issue to be

submitted to the jury. "If a motion for a summary judgment were to be denied in every instance where an issue appears in the pleadings by an allegation and a denial, there would indeed be little or no use or need for the statute, as there would be no functional difference between the motion and our traditional system of taking advantage of defects in the pleadings by the use of general and special demurrers. It is obvious that the General Assembly intended for the statute to have a greater and more beneficial scope. We think the legislature had as a primary purpose in enacting the summary judgment procedure to allow a party to pierce the allegations of the pleadings and show the truth to the court and receive judgment where there is no genuine issue of material fact although an issue may be raised by the pleadings." *Scales v. Peevy,* 103 Ga. App. 42, 47 (118 SE2d 193). Therefore, the question presented, no counter affidavits or depositions having been filed by the plaintiff, is whether the affidavits submitted by the defendants pierced the general allegations of the petition so as to show that the defendants were not liable for maliciously prosecuting the plaintiff.

"When . . . a person in good faith truthfully communicates to the Solicitor-General all facts known to the former in relation to a criminal charge against another, and is advised that the facts as stated constitute an indictable offense, and such person becomes the prosecutor on an indictment prepared and submitted to the Grand Jury by such officer, he cannot be held liable in damages for a malicious prosecution at the suit of the accused, even though on the trial under the indictment it appears that the facts as stated do not constitute a crime and that the defendant was not in fact guilty of any offense." *Hicks v. Brantley,* 102 Ga. 264 (2a) (29 SE 459). While generally a jury question is presented as to whether all the facts were laid before the Solicitor-General (*Code* § 105-802; *Peppas v. Miles,* 82 Ga. App. 438 (3), 61 SE2d 429), yet "this does not mean that a jury would be authorized to find a want of probable cause without any evidence whatsoever to establish the fact. On the contrary, where the material facts are not in dispute, or where only one inference is to be drawn from the evidence,

the existence or nonexistence of probable cause for a prosecution is a question of law to be determined by the court." *Sirmans v. Peterson*, 42 Ga. App. 707, 709 (157 SE 341).

One of the affidavits submitted by the defendants, in support of their motion for summary judgment, was that of Carl Copeland, First Assistant Solicitor-General of the circuit where the indictments against the plaintiff were obtained. This affidavit read in part as follows: "That on the 29th day of April, 1960, the Grand Jury of this County returned two indictments of several counts each against John Spratlin charging him with the offense of larceny after trust; that prior to the return of said special presentments your deponent and Mr. Charlie Stewart, Assistant Solicitor-General, had several conferences with Mr. Joe W. Freeman, a Vice President of Manufacturers Acceptance Corporation, and William S. Shelfer, attorney for said corporation. Your deponent says further that in said conferences said named defendants and their attorney related in detail to your deponent and to Mr. Stewart, Assistant Solicitor-General, the fact that the defendant, Manufacturers Acceptance Corporation, had made a floor plan loan of some $25,000.00 to Forest Park Motors, Inc., a corporation, of which the plaintiff was the President and managing officer; that all of the loans were made in Fulton County on automobile units on the lot of the Forest Park Motors, Inc., in Clayton County, Georgia; that said money was to have been repaid in Fulton County; that all of the checks were delivered to the plaintiff and deposited by him in the Lakewood Bank in this county to the credit of said Forest Park Motors, Inc.; that the said Forest Park Motors, Inc., through plaintiff, its president, executed bills of sale to the automobile units involved conveying the titles of said vehicles to Manufacturers Acceptance Corporation; that the said Forest Park Motors, Inc., through the plaintiff herein, executed trust receipts for each of said vehicles under which the plaintiff, acting for the Forest Park Motors, Inc., could display and sell said vehicles and then immediately pay to defendant, Manufacturers Acceptance Corporation, the net amount due it on each unit so sold and as sold. Your deponent further says that all of said original checks, with endorsements thereon, were

exhibited to your deponent; that defendants also exhibited to your deponent in said conferences all of the original bills of sale executed by plaintiff as President of the Forest Park Motors, Inc. Your deponent further says that the defendants and said Shelfer further revealed to deponent that the defendant, Manufacturers Acceptance Corporation, had made a routine check on the lot of the Forest Park Motors, Inc. and discovered that six of the vehicles upon which it had bills of sale and a trust receipt were missing from the lot, and it was further disclosed to your deponent that the plaintiff admitted to the defendant, it had sold said vehicles but that the plaintiff refused to advise defendants where he had sold said vehicles; that the plaintiff herein gave to defendants false information as to where said cars had been sold; and that when plaintiff was informed that the information was incorrect, he would in turn give yet further incorrect information as to where and how the cars had been sold. Your deponent says further that it was also revealed to him by the defendants that plaintiff finally refused to tell the defendants, or either of them, where or how said cars had been disposed of; that defendants had demanded of the plaintiff that he account to Manufacturers Acceptance Corporation for the vehicles so sold and that the plaintiff herein in Fulton County, Georgia in the office of the attorney for the defendant, Manufacturers Acceptance Corporation, refused to account to defendant Manufacturers Acceptance Corporation for the vehicles thus sold; that your deponent was further informed that at the time the plaintiff herein made said refusal the plaintiff offered $4,000.00 in settlement of the shortage, and that Manufacturers Acceptance Corporation declined to accept said offer. Your deponent says further that the defendants herein and the said William S. Shelfer, their attorney, did lay all of the foregoing facts before the Solicitor-General of this judicial circuit by and through your deponent and that after having revealed to your deponent a full, fair and complete statement of all facts known to them did seek the advice of the Solicitor-General as to what course of action to pursue. Your deponent says further that after the conclusion of said conferences your deponent and Mr. Stewart, Assistant Solicitor-General, did advise that the matter

be presented to the Grand Jury and that thereupon your deponent and the said Stewart, upon their own motion and volition and without any promptings from any of the defendants herein, did prepare two indictments against plaintiff herein; that said Freeman and Buzzell and other employees of Manufacturers Acceptance Corporation were summonsed by the Solicitor-General's office to appear before the Grand Jury; however, only Mr. William J. Buzzell, a Vice President, actually appeared before the Grand Jury. Your deponent says further that the presentation of the matter before the Grand Jury, the preparation of the indictments, and the prosecution of the plaintiff herein upon said indictments were all handled by the direction of the Solicitor-General; that defendants herein acted upon the advice of the Solicitor-General of this judicial circuit; and that said advice was given after a complete consideration of all of the facts and circumstances related to deponent. Your deponent says further that after he and the said Stewart had considered all the facts and circumstances in connection with the transaction that deponent, acting for and in behalf of the Solicitor-General of this judicial circuit, did advise and counsel defendants in this case to prosecute the plaintiff for larceny after trust; that deponent and the said Stewart, acting for the Solicitor-General of this judicial circuit, and for the State of Georgia did prepare said special presentments or indictments and presented them to the Grand Jury of this County; that the State subpoenaed the defendants, compelling their attendance upon the Grand Jury and the traverse jury; that the State of Georgia prosecuted the plaintiff, presented the matter before the Grand Jury, and tried the same through its proper officer, the Solicitor-General of this judicial circuit, before the traverse jury; and that although the traverse jury found the plaintiff not guilty in the criminal case, that your deponent would, nevertheless, give the matter the same direction as before if the matter were again to be repeated."

What statement attributed to the defendants was false, or fraudulent? No counter affidavits or depositions were filed to resist the motion for summary judgment and it must be assumed that all the information furnished the Solicitor-General, accord-

468

ing to the affidavit of Copeland, was true. Were additional facts furnished the Solicitor-General that were fraudulent, or false, or were there other facts in the possession of the defendants that were not furnished to the Solicitor-General? None appear from the record, and if such situation existed it was the duty of the plaintiff to introduce such relevant facts into the summary judgment hearing, for otherwise the general allegations of the petition must yield to the specific facts of the case as shown by the documents filed in support of the motion for summary judgment, or, to state it differently, the defendants pierced the general allegations of the petition and showed, in so far as the record makes it appear, the truth of the transaction as to which there was no issue of fact. The defendants made a full disclosure to the Solicitor-General and relied on his advice. The judgment of the trial court granting the defendant's motion for summary judgment was not error for any reason assigned.

*Judgment affirmed. Frankum and Jordan, JJ., concur.*